IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| **VALENTIA COLEMAN** § | |
| § | Case Number 5:17-cv-00819 |
| **Vs** § | |
| § | |
| § | |
| **SECRETARY OF THE DEPARTMENT** § | |
| **OF THE AIR FORCE, HEATHER** § | |
| **WILSON** § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, Valentia Coleman, (hereinafter "Plaintiff") through her counsel, Ricardo A. García-Tagle, hereby submits this, her, Original Complaint and complains of the Defendant, upon information and belief, as follows:

### I.
### NATURE OF CASE

1.  Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"), and seeks damages to redress the injuries Plaintiff suffered as a result reprisal, failure to promote, failure to provide training, and a hostile work environment.

2.  Jurisdiction of this action is conferred upon this Court as this action involves a federal question under Title VII of the Civil Rights Act. 28 U.S.C. §1331.

3.  Venue is proper in this District because a substantial part of the events or omissions giving rise to the claim occurred within the Western District of Texas. 28 U.S.C. §1391(b).

## II.
## CONDITIONS PRECEDENT

4. All conditions precedent to the relief being sought by Plaintiff in this Complaint have been performed. More than 180 days have passed since the filing of Plaintiff's formal complaint and Plaintiff has not received a final decision, *Docket #8Z0J15015*. Consequently, Plaintiff is authorized by 29 C.F.R. 1614.407(b) to bring this action in this Court.

## III.
## PARTIES

5. Plaintiff, Valentia Coleman, is an Emergency Management Specialist with the 502nd Civil Engineering Squadron, Emergency Management Flight (CES/CEX) at JBSA-Lackland, AFB, TX, currently residing in Bexar County, Texas.

6. Defendant, United States Air Force, is an agency of the United States of America and operates the JBSA- Lackland, AFB, TX. At all times, relevant hereto Defendant was Plaintiff's employer.

## IV.
## FACTUAL AND GENERAL ALLEGATIONS

7. In or about March 2010, Plaintiff filed an informal Equal Employment Opportunity ("EEO) complaint with the Equal Employment Opportunity Office at JBSA-Randolph. In the complaint, Plaintiff stated that during her probationary period, she was sexually assaulted multiple times by her supervisor, Willie Monroe, the 502nd CES Emergency Management Flight Chief, (hereinafter "Mr. Monroe").  Mr. Monroe was Plaintiff's supervisor and the hiring official who used Plaintiff's need for a job to coerce and threaten her.

2

8.     In response to Plaintiff's 2011 EEO informal complaint, Richard Treviño, a 502nd Flight Chief, detailed Plaintiff to a Security Manager job within the 502nd at Randolph Air Force Base.  Besides, giving Plaintiff an additional detail within the 502nd, no other remedy or assistance was offered to Plaintiff. However, Plaintiff never received any documentation confirming the detail to the Security Manager position, which stymied her career path and professional success since she did not receive any credit or developmental opportunities in this detail.

9.     In or about March 2011, after Plaintiff's probationary period ended, the sexual assaults subsided but the harassment began by other employees, including supervisors in the 502nd, who unjustly accused Plaintiff of misconduct and wrongdoing.

10.    In or about April 2011, Plaintiff was randomly selected to participate in an anonymous Air Force panel investigating sexual misconduct in the 502nd. During the individual interviews, Plaintiff again reported that she had been sexually assaulted, coerced and harassed by Mr. Monroe.

11.    Neither the Air Force Investigator taking employees' statements nor anyone in the Air Force ever contacted Plaintiff about her statements concerning being sexually assaulted, coerced and harassment by Mr. Monroe.

12.    During the months that followed, Plaintiff endured countless comments and hostile acts by supervisors and employees who wanted to believe that Plaintiff was underserving of their compassion as a victim. Notwithstanding the abuse, Plaintiff thrived in her career becoming a valued resource and course instructor who was sought after for her acumen in Emergency Management.

13. In or about February 2015, without any expectation, Plaintiff was named as a witness in an EEO complaint filed by Sasha Wilson (hereinafter "Ms. Wilson"). Ms. Wilson was also an employee with the 502$^{nd.}$ Ms. Wilson's EEO complaint centered on allegations of sexual harassment committed by Mr. Monroe. Identical to Plaintiff situation in 2010, Mr. Monroe was Ms. Wilson's supervisor and hiring official. Plaintiff was ordered to give a statement to the EEO Investigator in this case.

14. On March 30, 2015, Plaintiff gave a telephonic informal statement to the EEO Investigator who processed the evidence in Ms. Wilson's case. Plaintiff made certain that she gave her statement in private where no one could hear her.

15. In or about April 2015, Mr. Monroe and his collaborators, including other employees of the 502nd confronted Plaintiff about the statement she provided to the EEO. Mr. Monroe threatened Plaintiff and was able to specifically quote what Plaintiff said in her statement.

16. In or about April 2015, Willie Gibbs, a Flight Chief for the CEX Flight told Plaintiff 'to make the Sasha Wilson EEO case go away because If I did not, it would be bad for me'.

17. Beginning in April 2015 and thereafter, Mr. Monroe, Frank Gautier, 502nd CES Emergency Management Flight Deputy Chief, Steven Clark, 502nd CES Emergency Management Flight Chief Superintendent (hereinafter "Mr. Clark"), Gregorio Andrades, 502nd CES Emergency Management Flight Specialist (hereinafter "Mr. Andrades") , Gregory Wilson, and other employees have relentlessly intimidated and harassed

4

Plaintiff and created a hostile work environment for her in reprisal for Plaintiff giving a testimony to the EEO Investigator concerning Ms. Wilson's EEO case.

18.     On or about May 8, 2015, Mr. Monroe ordered that all 502nd CEX employees move their desks from the space shared by all Plaintiff's co-workers in an effort to leave Plaintiff alone in the basement to work.

19.     Plaintiff complained to management that Mr. Monroe did not have unilateral authority to move employees' desks and isolate Plaintiff.  Many of Plaintiff's co-workers resented Plaintiff for having to move to another location. These co-workers further marginalized and isolated Plaintiff.

20.     In or about June 2015, Mr. Monroe called Plaintiff to a meeting with Mr. Clark and Mr. Andrades. In this meeting, Mr. Monroe proceeded to tell Plaintiff that she should not be a "turncoat" and how they are not to be trusted.

21.     Throughout the spring and summer of 2015, Mr. Monroe and his collaborators would be verbally attack Plaintiff in reprisal for Plaintiff providing testimony in Ms. Wilson's EEO case. Plaintiff was also disparately treated and made to work in a hostile environment. One example of the hostility was management's requirement that Plaintiff had to take 15-minute increments of leave at a time to attend medical appointments.

22.     On or about July 15, 2015, Plaintiff met with Colonel Alexander Smith, Commander of the 502nd Installation Support Group to complain of her treatment. Plaintiff informed him of the harassment and the hostile work environment she was enduring. Coronel Smith instructed Plaintiff to meet with Brenda Roesch, Director of the 502nd Civil Engineering Squadron (CES)(hereinafter "Ms. Roesch").

23.     On or about July 15, 2015, Plaintiff met with Ms. Roesch and informed her of the sexual assaults perpetrated by Mr. Monroe, the disparate treatment, abuse, hostile work environment, the testimony Plaintiff provided in Ms. Wilson's EEO case, and the subsequent acts of reprisal against Plaintiff.

24.     In or about July 2015, Ms. Roesch ordered a Commander Directed Investigation (hereinafter "CDI"), which she claimed would focus on the misconduct by the 502nd.

25.     On September 16, 2015, Plaintiff gave formal testimony in Ms. Wilson EEO case.

26.     On or about November 3, 2015, Plaintiff was served with a Notice of Proposed Suspension for five (5) days for allegedly being "absent without leave" (AWOL) and for "conduct unbecoming". These claims stemmed from a claim that Plaintiff did not actively participate in a course she attended in June 2015. Because of management's claims, Plaintiff's wages were docked and the AWOL claim was reported on Plaintiff's record. Eventually, after going through the grievance process, both the AWOL and conduct unbecoming allegations were shown to be false. Despite the fact that the allegations were fabricated, Plaintiff was issued a Letter of Reprimand instead.

27.     In January 2016, Ms. Roesch told Plaintiff that the CDI she ordered "found nothing' to conclude that there was any misconduct in the 502nd.  Plaintiff subsequently learned that the CDI did not focus on the activities of the 502nd but rather it reviewed and scrutinized Plaintiff's actions.

28.     As a result of the negative findings of the CDI and because Plaintiff was not working in her chosen career path, Plaintiff was returned to work with the CEX Flight Crew.

29.     Immediately after Plaintiff returned to the CEX Flight Crew, she became the target of renewed verbal attacks and harassment by CEX employees, including Steven Clark, 502nd CES Flight Chief Superintendent, who in or about February 2016, confronted Plaintiff and asked her 'why don't you just quit'.

30.     On February 12, 2016, in the CEX Building, Willie Monroe accosted, grabbed and assaulted Plaintiff. Mr. Monroe intimated to Plaintiff that he should not be messed with because one of his family members had a reputation that included murder. On February 16, 2016, Plaintiff filed a report of assault with the Air Force Base Security.

31.     After the filing of the assault report, Plaintiff met with Felipe Jiménez, an assistant of General Robert LaBrutta, Commander, 502nd Air Base Wing, Joint Base San Antonio. Mr. Jiménez promised Plaintiff that she would be detailed to a safe place where she could thrive and would be given credit for the detail.

32.     On or about March 21, 2016, Brenda Roesch, Director of the 502nd, and Mr. Monroe moved Plaintiff out of the CEX and detailed her to the Civil Engineering Support Flight (hereinafter "CENME"). However, Plaintiff was not given any written confirmation of the detail to the CENME, and as a consequence, Plaintiff, again, has not received credit for the detail to CENME Flight.

33.     As a condition of Plaintiff's detail to the CENME, Mr. Roesch promised Plaintiff that she would have access to adequate training to allow Plaintiff to succeed in this new detail.  However, Ms. Roesch has not provided any relevant and useful training for Plaintiff. Moreover, despite the fact that Plaintiff remains assigned to the CEX Flight,

(only has been detailed to CENME) she is not allowed to participate in CEX exercises or teaching opportunities that are necessary for Plaintiff to maintain her certifications and status as an Emergency Management Specialist. As a result of this thinly-veiled plot, Plaintiff is being prevented from succeeding in her career.

34.     Additionally, for a reason not shared with Plaintiff, Plaintiff's compensation has been unjustifiably reduced after she was detailed to the CENME Flight.

35.     Furthermore, since Plaintiff has been detailed, she has been intentionally lied to concerning promotion opportunities in the CEX Flight. Prior to 2016, Plaintiff had begun asking her supervisors Ms. Roesch, Mr. Monroe, Susan Landrum, Civil Personnel Liaison and others about the possibility of accretion of duties promotions of the GS-09 CEX Flight employees to GS-11 titles.  Each person Plaintiff spoke with either ignored her requests for information about promotions or lied about the existence of these job promotions.  Specifically, on July 6, 2016, Susan Landrum told Plaintiff, that Plaintiff's GS-09 CEX job title was not part of the accretion of duties promotions to a GS-11 job title. After Plaintiff discovered that there had been four (4) promotions of GS-09 employees to GS-11 titles, Ms. Landrum told Plaintiff:  "I'm on Team Willie (Monroe)".

36.     Even though Plaintiff was the CEX Flight Crew Section Leader over two (2) of the employees that were promoted and the ranking GS-09 employee, Plaintiff was not promoted to a GS-11 position. Instead, the promotions were awarded to four (4) other CEX Flight Crew employees. The four GS-09 employees who received the promotions instead of Plaintiff were: Wendell Ramclam, Robert Trout, Allen Mendiola, and John McCarthy.

8

37.     In or about September 2016, an indebtedness action was served on Plaintiff for an alleged overpayment to her.  Plaintiff did not receive an adequate explanation for the change of her pay since she was still assigned to the CEX Flight and was only on a detail to the CENME.  As a result, Plaintiff's future earnings were garnished to pay for the alleged overpayment.

38.     Prior to the promotions of the GS-09 employees to GS-11 titles, Plaintiff was not informed of the opportunity to be considered for promotion to a GS-11 position. And unlike the employees that were considered and ultimately promoted to the GS-11 positions, Plaintiff was not provided with an Employee Audit Questionnaire to compete for the promotion to GS-11.

39.     Although Plaintiff remains assigned to the CEX Flight Crew, Plaintiff has been denied the opportunity to participate in work exercises and teaching opportunities that are necessary to maintain her CEX certifications and teaching credentials. Also, Plaintiff has not been considered for awards and honors that are given to employees at the CEX.

40.     Plaintiff is currently being harassed and made to work in a hostile environment in reprised for her EEO testimony by her supervisors, including Ms. Roesch, Cynthia Algueseva, 502nd CES CENME, and Michael Arazate 502nd CES CENME.  Specifically, in May 2017, Plaintiff's supervisors inexplicably ordered the removal of Plaintiff's computer from her desk.  Additionally, Plaintiff has been disparately treated by her supervisors.  Plaintiff has been ordered to hand-write daily reports, she has to report every time she uses the restroom, and has to email her supervisor to clock in and out.  Also, Plaintiff, unlike other employees, was told that she cannot use her cell phone,

cannot wear hats, and cannot use headphones, even though she uses headphones for work related purposes.

## IV.
## FIRST CAUSE OF ACTION
## REPRISAL AND FAILURE TO PROMOTE

41. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

42. Although Plaintiff was fully qualified for the GS-11 positions offered to other GS-09 in the CEX Flight, said positions were awarded to less qualified candidates in reprisal for engaging in prior protected activity as previously described herein.

43. Plaintiff has been intentionally harassed, disparately treated, made to work in a hostile environment, intentionally isolated and misled by Defendant in reprisal for engaging in prior protected activity as previously described herein.

44. As a result of the foregoing, Plaintiff has been injured and damaged, and Plaintiff hereby seeks to recover any and all remedies afforded and/or available under law and/or in equity.

## V.
## SECOND CAUSE OF ACTION
## REPRISAL AND FAILURE TO TRAIN

45. Plaintiff incorporates by reference the preceding paragraphs pf this Complaint as though fully set forth herein.

46. Although Plaintiff has been available for any and all training promised to her, she has been refused all useful training. Moreover, because Plaintiff is not allowed to

participate in any training and teaching opportunities with the CEX Flight, Plaintiff is being doubly punished.

47. Defendants failure to train Plaintiff in the detail to the CENME and its prohibition of her participation in the CEX is in reprisal for engaging in prior protected activity as previously described herein

48. As a result of the foregoing, Plaintiff has been injured and damaged, and Plaintiff hereby seeks to recover any and all remedies afforded and/or available under law and/or in equity.

## VI.
### THIRD CAUSE OF ACTION
### REPRISAL AND HOSTILE WORK ENVIRONMENT

49. Plaintiff incorporates by reference the preceding paragraphs pf this Complaint as though fully set forth herein.

50. Defendant's repeated failures to follow-up with any meaningful investigation has left Plaintiff to suffer in a hostile work environment, including but not limited to: threats, assaults, reprimands, isolation, disparate treatment, and abuse.

51. Defendant's actions in subjecting Plaintiff to this hostile work environment is in reprisal for engaging in prior protected activity as previously described herein.

52. As a result of the foregoing, Plaintiff has been injured and damaged, and Plaintiff hereby seeks to recover any and all remedies afforded and/or available under law and/or in equity.

# VI.
# REQUESTED RELIEF

53.     As the direct and/or proximate result of the actions and/or conduct of Defendant complained of herein, Plaintiff has suffered, and continues to suffer, from intentional discrimination and/or discriminatory treatment, as well as adverse employment actions, including lack of adequate training, promotion and career success, and reprisal as previously described, which have damaged and caused, and continues to damage and cause, Plaintiff to experience damages, including emotional distress, and mental anguish.

54.     Accordingly, Plaintiff seeks recovery of the full measure of relief and damages provided by Title VII against Defendant, including but not necessarily limited to damages for loss of wages, past and future, the harm to her personal and professional reputation, out-of-pocket losses and/or expenses, emotional pain and suffering, inconvenience, mental anguish, and other pecuniary and non-pecuniary losses in an amount within the jurisdictional limits of this Court to be proven at trial.

# VII.
# FEES AND COSTS

55.     In addition to and without waiving and/or limiting any other relief requested in this Complaint, Plaintiff is entitled to and seeks to recover his reasonable and necessary attorneys' fees and costs incurred and to be incurred in bringing this suit and in all appeals of this suit, as permitted by law, in equity. 42 U.S.C. §12205.

## VIII.
## DEMAND FOR JURY TRIAL

56.     Pursuant to the Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests trial by jury and will tender the requisite fee.

## IX.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that upon final hearing, Plaintiff recover judgment against Defendant and be awarded: (1) any and all amounts recoverable and/or recognizable as damages under law and/or in equity, resulting and/or occasioned by the wrongful acts and/or conduct of Defendant (as set forth above more specifically); (2) injunctive relief to the extent permitted by law and/or equity; (3) equitable relief to the extent permitted by law and/or equity; (4) litigation expenses and costs, including but not limited to reasonable and necessary attorneys' fees and costs and any applicable expert fees; (5) prejudgment and post judgment interest at the maximum rate permitted by law; (6) costs of court; and (7) such other and further relief, both general and special, at law and in equity, to which Plaintiff may show herself to be justly entitled.

DATED this 24th of August 2017.

                Respectfully submitted,

                LAW OFFICE OF
                RICARDO A. GARCÍA-TAGLE

                _____
                Ricardo A. García-Tagle
                Bar Number 24025375
                315 S. St. Mary's Street

                                        San Antonio, TX 78205
                                        210.444.1599
                                        210.855.6098 (f)
                                        Ricardo@ragarcialaw.com

                                        **ATTORNEY FOR PLAINTIFF**
                                        **VALENTIA COLEMAN**