**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **VALENTIA COLEMAN** | () | |
| | () | **Case Number 5:17-cv-00819-FB** |
| **Vs.** | () | |
| | () | |
| **SECETARY OF THE DEPARTMENT OF** | () | |
| **THE AIR FORCE, HEATHER WILSON** | () | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO EXCLUDE IMPROPER**
**PREJUDICAL EVIDENCE**

Comes now Plaintiff, (hereinafter "Plaintiff" or "Ms. Coleman") through her attorney, and responds to Defendant's Motion to Exclude Improper Prejudicial Evidence (hereinafter "Motion to Exclude"). In support of the response, Plaintiff states as follows:

### I.        Response to Summary

In its Motion to Exclude, Defendant attempts to convince the Court that it should not allow Plaintiff to present relevant evidence of hostility and retaliation because, as opposing counsel stated during the parties' status conference on December 6, 2019, such evidence might embarrass his client. In its Motion to Exclude Evidence, Defendant request that Court exclude evidence of: (1) an alleged sexual assault by Willie Monroe (2) the Air Force's attempts to cover-up accusations against Willie Monroe and (3) all other matters raised in a prior grievance and arbitration proceeding. *Def's Motion to Exclude, at pg. 1.*

With regard to evidence of the 2010 sexual assault by Willie Monroe, Defendant goes to great lengths to deny the existence of evidence concerning a complaint filed by Ms. Coleman and spends many pages attempting to portray Ms. Coleman as a disgruntled employee in an effort to convince the Court to ignore the plain facts. On page 2 of its Motion to Exclude, Defendant insists that *"there are no documents or independent testimony to substantiate Ms. Coleman's allegation*

1

*against Willie Monroe and the records that do exist tell a different story" Id. at pg.2.* However, Kristin Babb, Defendant's designated Rule 30(b)(6) witness repeatedly confirmed that in 2010, Plaintiff filed a complaint with the Air Force and the EEOC alleging sexual assault and sexual harassment. Defendant's deliberate deception on this subject alone should necessitate the denial of its Motion to Exclude. *See infra, at pg. 5, Excerpts of Ms. Babb's deposition testimony.*

With regard to Defendant's second request to exclude evidence, specifically Defendant's cover up of the sexual assault and harassment, the Court need not look further that Defendant's attempt at deception with its first request to exclude evidence.  In sum, Defendant's duplicity is evidence of its motivation, history and knowledge of the relevant sexual assault and harassment. Therefore, this evidence is relevant to Plaintiff's underlying claim of retaliatory hostile work environment. Defendant's past actions also expose a severe level of corruption by management and thus, for the same reasons, should not be excluded from being presented as evidence.[1]

With regard to Defendant's third item, a request to exclude evidence of matters raised in a prior grievance and arbitration, Defendant's legal argument falls flat. In its Motion to Exclude, Defendant claims that pursuant to 5 U.S.C. 7121(d) and 29 C.F.R. 1614.301(a), Plaintiff should be "*prohibit[ed] from raising, referring to, or introducing evidence concerning allegations of sexual harassment or assault, conspiracy by Air Force Officials, and all other matters that were subject to her grievance and arbitration proceedings.*" *Id. at 12.* Defendant asserts that 5 U.S.C. §7121(d) requires the Court to prohibit Plaintiff from referencing "any matters" that may have been referenced in a previous grievance/arbitration process. *Id. at 12*. Despite Defendant's effort to re-write the language and scope of the statute, Defendant's argument is not supported by the

---

[1] See https://www.expressnews.com/news/local/article/Joint-Base-San-Antonio-has-worst-record-of-sexual-12368711.php# "Joint Base San Antonio has the Worst Record of Sexual Assaults of all Joint Bases in the Country." San Antonio Express News, Christensen, Sig, (Nov. 18, 2017).

text of the statute, its interpretation, the relevant Code of Federal Regulations, the facts, or by common sense.

Generally, Title 5, Section 7121(d) requires an employee to select where the employee wants her matter, i.e., complaint, adjudicated. The employee has a choice between (1) a negotiated procedure, typically a labor agreement or (2) through a separate statutory procedure – not both. Simply, the statute prohibits an aggrieved employee from litigating the same claim (and seeking a remedy) in the forum she did not originally choose. Defendant would have the Court believe that the term "matter", as stated in 5 U.S.C. § 7121(d) includes *"underlying conduct and circumstances* - it does not.

With a majority of its Motion to Exclude, Defendant attempts to convince the Court that Plaintiff is a malcontent, agitator and all around bad employee in an effort to tarnish her reputation and discredit her claims. However, in fact, Plaintiff is a respected person and employee who honorably served in the United States Air Force as an Emergency Manager. Ms. Coleman was honored as a distinguished graduate from her technical training at the United States Army CBRN School at Fort Leonard Wood, Missouri and has two associate's degrees and a bachelor's degree. See Exhibit 1, Plaintiff's Declaration, at ¶¶2, 3, 4. Defendant's extensive ad hominem against Ms. Coleman fails to conceal the harm that was done to Ms. Coleman and the hostility she is enduring, including the appalling state of her career and work status.

In 2010, Ms. Coleman was targeted by Willie Monroe, sexually assaulted, harassed and then retaliated against after exercising her rights under the law. *Exhibit 1, Declaration of Plaintiff, at ¶¶ 6, 7, 8, 14, 15,16, 17, 18, 19, 20, 21, 22, 27, 28*. More recently, in March 2016, after she was physically assaulted by Willie Monroe, Ms. Coleman was removed from her Emergency Management position and detailed to an Engineering Technician. The detail to this position was

3

for a maximum 1 year duration, ending in March 2017. *Exhibit* 2 *and Exhibit 1, at ¶¶27, 28.*  More than 3 years have elapsed since then and Ms. Coleman is still in the Engineering Technician position without proper supporting detail documentation. Without proper documentation, Ms. Coleman's career brief shows a vacancy with no activity, essentially it shows a void for the last 3 years. *Id. at ¶¶ 29, 32.* In his deposition, Ms. Coleman's current supervisor, Michael Arzate, admitted to the dire conditions of Ms. Coleman's employment work and status. In his August 15, 2019 deposition, Mr. Arzate's confirmed that, with every passing day, Ms. Coleman promising career is being intentionally destroyed and will remain in permanent limbo for the foreseeable future. *Id. ¶29.*

> Q. [by Mr. Garcia-Tagle] Right, so –but you said you inquired about this document, and it shows that she's been –she was detailed to you for up to one year in 120 day increments and that you were done with her in March 2017; correct?
> A.  [by Mr. Arzate] Correct.
> Q. Okay. And you're stating that it is a problem for you because you shouldn't be her supervisor at this point.
> A. Correct.
> Q. Okay. So are you interested in trying to find out if you're going to be assigned to be her supervisor?
> A. I've asked multiple times what the situation is with Ms. Coleman.
> Q. Who have you asked?
> A. I've asked civilian personnel; I've asked supervision, leadership – in separate meetings with leadership.
> Q.  Okay. What does civilian personnel say?
> A.  Civilian personnel says—they don't really say anything. I got crickets back.
> *Deposition testimony of Mr. Arzate, Exhibit 3, pg.17.*
> --
> Q. Okay. And more recently, within the last nine months, have you given her any assignments?
> A. No, but she did volunteer…
> Q. Okay but have you assigned her any tasks?
> A. No.
> Q. Zero tasks?
> A. No, no
> Q. Zero work?
> A. Zero work
> *Id. at pg 50.*
> --

Q.  How many months has it been since you've given her (Ms. Coleman) any tasks?
A. How many months has it been since I have given her any task?
Q. Correct. You talked about –and I'll let you think about it a little bit, but you talked about her re-writing some specifications. Do you know what year that was?
A. I—it was last year, so it was 2018.
Q. 2018
A. Yeah.
*Id. at pg 57.*

The following are deposition excerpts of Kristin Babb, Defendant's designated 30(b)(6)

witness, that belie Defendant's claim Plaintiff will attempt to:

"*inflame and unfairly prejudice the proceedings by raising allegations that Mr. Monroe sexually harassed and assaulted her in 2010 and that the Air Force engaged in a conspiracy to cover up ...*" by insisting that: "*there are no documents or independent testimony to substantiate Ms. Coleman's allegations against Mr. Monroe and the records do tell a different story*". *Def's Motion to Exclude, pgs. 1-2.*

The true story is the following:

Q. [by Mr. Garcia-Tagle] Yes, ma'am. And I apologize. If you have any questions, if I'm not clear, you can ask me to clarify, I'll be happy to do that.
Q.  What information do you have about Ms. Coleman going to the EEO office to file a complaint against Mr. Monroe in 2010?
A.  [by Kristin Babb] The only information I have is what I read, which said that that happened.· So that would be all that I have.
Q. Okay.· Could you be able to confirm that Ms. Coleman made an allegation of sexual harassment and sexual assault to the EEO office?
A.  From documentation, yes.
----
Q.  In 2010, you've agreed that Ms. Coleman did go to the EEO office to complain about Mr. Monroe, correct?
A.  Yes.
Q.  And I asked you also to confirm the allegations made by Ms. Coleman that included a claim of sexual harassment and sexual assault.· Can you confirm that?
A.  Yes.
-----
Q.   Ms. Babb do you recall the specifics of the sexual assault claim made by Ms. Coleman in 2010 against Mr. Monroe?
A.  No.
Q.  Was Ms. Coleman complaining about a sexual assault committed by Mr. Monroe in 2010?
A.  Yes.
Q.  Do you know if Mr. Monroe was ever disciplined because of that allegation of sexual assault?

A.  I don't know.
Q.  Did you read anything in the file or the files that show that Mr. Monroe was disciplined because of that allegation of sexual assault?
A.  No.
Q.  Do you know if anyone in Ms. Coleman's chain of command was made aware of the sexual assault complaint?*[Objection-Mr. Schottenstein- witness allowed to answer]*
A.  I don't know if they were made aware in 2010.
*Exhibit 4, Deposition testimony of Ms. Babb, pgs. 14-19,*

Defendant's shameless attempt at deception concerning the existence of evidence of Plaintiff's 2010 efforts and actions to report sexual harassment and sexual assault illustrates the lengths Defendant and its enablers will go to cover up the truth and denigrate Plaintiff.

With the remainder of its Motion to Exclude, Defendant goes on to mischaracterize additional facts and evidence and further attacks Plaintiff's integrity in order to continue with its contemptible agenda.

After Plaintiff complained to management about being sexually assaulted and harassed, Plaintiff began to face retaliation not only from Willie Monroe, but also from the staff who wrongly assumed that Plaintiff was somehow culpable. Plaintiff began receiving unjustified disciplined. *Exhibit 1, at ¶6.*

With regard to Plaintiff's actions concerning Sasha Wilson, Plaintiff was named as a witness in Ms. Wilson's EEOC case against Willie Monroe and was required to give a statement to an EEOC investigator. *Id. at ¶¶23-24.* In March 2015, the EEOC investigator requested that Ms. Coleman give a verbal statement over the telephone. As soon as Plaintiff returned to her office after giving a verbal statement, her co-worker repeated some of the content of her verbal statement. In July 2015, Ms. Coleman was sent an email officially naming her as a witness in Ms. Wilson's EEOC complaint. Immediately, the harassment by Willie Monroe and his enablers increased. Two days later, Ms. Coleman was forced to complain to Group Commander, Colonel Alexander Smith about her treatment. *Exhibit 1 at ¶25.* On that same day, Colonel Smith ordered a Commander

Directed Investigation (hereinafter "2015 CDI") to investigate the allegations made by Ms. Coleman. *Exhibit 5.* Colonel Smith removed Ms. Coleman from working for the Emergency Management Group (under Willie Monroe) and into a detail with the Real Property Group. Colonel Smith ordered Brenda Roesch to take the lead on the 2015 CDI and Ms. Roesch enlisted Grace Cormier-Johnson to investigate the allegations.[2] The 2015 CDI encompassed 3 allegations. *See Id. at pg.1*

The 2015 CDI resulted in 2 significant confirmations that corroborated Plaintiff's allegations. The findings of the 2015 CDI **substantiated 2 of the 3 allegations** investigated.

Allegation number 1: The 2015 CDI **substantiated** that "[b]etween on or about 1 July 2010 and on or about 24 July 2015, Willie Monroe **did engage in harassment of Ms. Valentia Coleman** by committing unwelcome sexual advances and engaging in other conduct of a sexual nature **including but not limited to,** the conduct outlined in the NDAA Informal Sexual Harassment Complaint Reporting memorandum from 502 ABW/EO…"

Allegation number 3: The 2015 CDI **substantiated** the allegation that "between on or about 1 July 2010 and on or about 24 July 2015, Mr. Willie Monroe, 502d Civil Engineering Squadron, JBSA-Lackland, Texas, **did engage in unprofessional relationships, to wit; adulterous relationships, with members of the squadron** in violation of AFI- 1.1, paragraphs 2.1 and 2.2." *(Emphasis added) See Id. at pgs. 6-7.*

Amazingly, Willie Monroe has never received ANY discipline as a result of these substantiated violations.

## II.   Argument

### A.  5 U.S.C. §7121 and C.F.R. §1614.301 do not preclude Ms. Coleman from raising, referring to, or introducing evidence concerning allegations of sexual harassment or assault against Mr. Monroe or conspiracy by Air Force officials, or other matters.

In its Motion to Exclude, Defendant tries to argue that Plaintiff, at this point in time, should be prohibited from raising, referring to, or introducing certain evidence because Plaintiff raised the matter in a grievance and arbitration. In its Motion to Exclude, Defendant attempts expand the

---

[2] Unbelievably, Defendant produced an undated statement from Ms. Comier -Johnson, presumably made after the findings of the 2015 CDI, apparently qualifying the finding she made in the 2015 CDI. *See Def's Exh. 41-6.*

scope of the specific language of 5 U.S.C. § 7121(d) to a level not supported by any authority.[3] It is axiomatic that the purpose of this provision of this statute is to prevent an employee from getting the proverbial two bites of the apple. For example, if an employee grieves and arbitrates his termination under a negotiated procedure, then that employee is prevented from later challenging his termination under a statutory procedure. This limitation is true even if the employee challenges his termination under a different legal theory. See *Pittman v. DOJ*, 486 F.3d 1276 (Fed. Cir. 2007 (Employee's termination under negotiated grievance procedure was same underlying agency action that was challenged in his improper removal claims therefore, his claims for improper removal under were "similar matters.)(internal citations omitted).

Under the statute, in order to determine whether a *matter* has been raised or adjudicated, it is necessary to look at the language of the relevant grievance and the issues presented to in the arbitration.  Here, the relevant grievance is Grievance number 16-06. *Exhibit 6, Grievance forms, step 1-3.* The relevant arbitration is case: FMCS 16-54724-3. *Exhibit 7.* Grievance 16-06 initially concerned a 5-day suspension given to Ms. Coleman for conduct unbecoming. Subsequently the 5-day suspension was downgraded to a letter of reprimand ("LOR"). Finally, the day before the arbitration, the LOR was rescinded completely. Ultimately, the matter presented for arbitration was limited to an issue concerning the "lateral reassignment of the grievant" (Ms. Coleman). *Exhibit 7, at pg. 3.* See also *Exhibit 8, Arbitrator S. Gallagher denying Agency's Motion to Dismiss, at ¶4; and Exhibit 9, email correspondence between the parties.*

---

[3] 5 U.S.C. 7121(d) An aggrieved employee affected by a prohibited personnel practice under section 2302(b)(1) of this title [5 USCS § 2302(b)(1)] which also falls under the coverage of the negotiated grievance procedure may raise the matter under a statutory procedure or the negotiated procedure, but not both. An employee shall be deemed to have exercised his option under this subsection to raise the matter under either a statutory procedure or the negotiated procedure at such time as the employee timely initiates an action under the applicable statutory procedure or timely files a grievance in writing, in accordance with the provisions of the parties' negotiated procedure, whichever event occurs first.

Therefore, because there is a lack of any evidence to show that a *matter* similar to what Defendant is requesting to exclude was part of Grievance 16-06 or Arbitration, FMCS 16-54724-3, Defendant's Motion to Exclude is baseless.

**B. Plaintiff is allowed under the Rules of Evidence and the theory of Plaintiff's claim to refer to prior bad acts including evidence of motivation, intent and proof of a continuing violation.**

Plaintiff's current claim, which originates from her EEOC charge, including the attachment narrative, included references to a pattern or policy of discrimination. As such, evidence of discriminatory acts committed as part of this pattern or policy should considered at trial under a continuing violation theory. *Baird v. DOI, 2016 U.S. Dist. LEXIS 1706* (E.D. La., Jan 7 2016). Under a continuing violation theory, courts consider the entire scope of the hostile work environment claim, including conduct alleged to have occurred outside the 45–day window, provided that "an act contributing to that hostile environment takes place within the ... time period." *Passenger Corp. v. Morgan,* 122 S.Ct. 2061, 2068 (2002). The continuing violation doctrine is designed to "accommodate plaintiffs who can show that there has been a pattern or policy of discrimination continuing from outside the limitations period into the ... limitations period, so that all discriminatory acts committed as part of this pattern or policy can be considered timely." *Celestine v. Petroleos de Venezuela SA,* 266 F.3d 343, 351 (5th Cir.2001); *Booker v Holder*, 2009 WL 4432689 (S.D.Tex.).

**C. Defendant's Motion to Exclude is unwarranted, premature and questions of admissibility should be handled on a question by question basis at trial under the Rules of Evidence.**

Under Rule 401 and 404(b) evidence of prior acts is relevant because can establish a pattern of practice consistent with claim of hostile work environment and retaliation. Moreover, evidence of prior acts could establish a basis for a damages award. *Galindo v. City of Roma*

*Police Dep't, 2001 U.S. App. LEXIS 32331* (trial court properly declined to exclude this evidence under Rule 403 because, although it may have been prejudicial, the legitimacy of the continuing violation theory made the evidence highly probative. Moreover, despite Defendant's assertion, exclusion of relevant evidence under Rule 403 is extraordinary remedy to be used sparingly. *K-B Trucking Co. v. Riss International Corp.*, 763 F.2d 1148 (10th Cir. 1985). Finally, Defendant's request to exclude evidence is premature because issues under Fed. R. Evid. 403 can be adequately addressed upon timely objection at trial, or in a charge to jury. *See Lovejoy-Wilson v. Noco Motor Fuels, Inc.*, 242 F. Supp. 2d 236 (W.D.N.Y. 2003).

### III.   Conclusion

For all the above reasons, Plaintiff asks the Court to deny Defendant's Motion to Exclude Evidence.

Respectfully Submitted,

By

Ricardo A. García-Tagle
Bar Number 24025375
315 S. St. Mary's Street
San Antonio, TX 78205
210.313.3049
210.855.6098(Fax)
Ricardo@ragarcialaw.com
ATTORNEY FOR PLAINTIFF

### CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2020, I electronically filed the foregoing document with the Clerk of the United States District Court, Western District of Texas, San Antonio Division, using the electronic case filing system of the Court with service to the following:

Dingivan, James, Assistant United States Attorney
james.dingivan@usdoj.gov

Ricardo A. García-Tagle

10