IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| VALENTIA COLEMAN | ) |
| | ) |
| | ) Case Number 5:17-cv-00819-FB |
| | ) |
| Vs. | ) |
| | ) |
| SECTARY OF THE DEPARTMENT | ) |
| OF THE AIR FORCE, BARBARA | ) |
| BARRETT | ) |
| | ) |

**SUPPLEMENTAL BRIEFING ORDERED BY THE COURT**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff's remaining allegation is a Title VII retaliatory hostile work environment claim against Defendant. Plaintiff alleges she was retaliated against after she provided testimony to the EEOC, after she filed grievances and proceeded through the grievance steps, after she reported an assault to the Base Police and management, and after she complained about Defendant's hostility and unfair and disparate treatment. Defendant's retaliation is causally connected to Ms. Coleman's protected activity and the hostile work environment faced by Ms. Coleman is severe and continual. Moreover, Defendant's hostility would deter other employees from exercising their rights under Title VII.

1.  Retaliatory Hostile Work Environment / Severe or Pervasive

One of the elements of a hostile work environment claim requires evidence of severe or pervasive hostility. In our facts, Defendant's acts of hostility against Ms. Coleman have been extensively detailed, they include, but are not limited to, Defendant returning Ms. Coleman to work for a confirmed abuser, refusing to tell Ms. Coleman the results of an investigation that confirmed her allegation of abuse, refusing to give Ms.

1

Coleman work assignments, failing to update Ms. Coleman's detail documentation (resulting in a 4.5 year career void), isolating her from co-workers, treating her disparately, refusing to allow her to keep her emergency management credentials, insisting on unwarranted discipline, and making disparaging comments about her to other employees. Defendant's acts of hostility have severely impacted Ms. Coleman's career, future job opportunities, and mental state.

To determine whether conduct was sufficiently severe or pervasive to violate Title VII, courts look at the totality of the circumstances. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 1993). The Supreme Court has followed a "middle path" with regard to the level of hostility or abuse necessary to establish a hostile work environment. "It is enough 'if such hostile conduct pollutes the victim's workplace, making it more difficult for her to do her job, to take pride in her work, and to desire to stay on in her position.'" *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1113 (9th Cir. 2004)(citing *Harris*, 510 U.S. at 21-22). In *Harris*, the Supreme Court reaffirmed the application and protections of Title VII. The Court stated: "Title VII comes into play before the harassing conduct leads to a nervous breakdown" because "[a] discriminatorily abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers." *Harris* at 32.

In our facts, Defendant has not only made it more difficult for Ms. Coleman to perform her job duties and/or advance her career, but it has completely obliterated Ms. Coleman's future work opportunities by wholly abandoning her and setting her up for

2

termination. Defendant's hostility has permanently damaged Ms. Coleman's career because Defendant has failed to support Ms. Coleman when she was detailed to a position (Engineering Technician) that Defendant knew she was not qualified to perform. S*ee Dkt 66, Ex. 13, an email by Lt Col McElhaney to Ms. Roesch confirming that Ms. Coleman did not qualify for the Engineering Technician position and that she would need training, mentoring, and support*. Defendant has intentionally refused to update and reauthorize Ms. Coleman's detail, which amounts to an inexplicable void in her career brief.[1] Defendant has refused to give Ms. Coleman any appropriate training and meaningful work assignments.[2] Defendant has refused and prevented Ms. Coleman from preserving her credentials in emergency management, which means Ms. Coleman is also no longer able to perform the duties of an Emergency Flight Management Specialist.[3] *See Dkt 66, Deposition testimony of C. Babb, Ex.3 and M. Arzate, Ex. 14*.

In *Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81 (2d Cir. 1996) the Second Circuit explained a work environment may be actionable if the conduct there is *either* so severe *or* so pervasive as to alter the working conditions of a reasonable employee. *Id.(*citing *Terry v. Ashcroft*, 336 F.3d 128 (2d Cir. 2003). While no single factor may be severe enough to deem a work environment hostile, "*the effect of a number of adverse conditions in the workplace is cumulative.*" *Chertktova at 90*. In *Gowski v. Peake*,

---

[1] Pursuant to regulation and Ms. Roesch's March 16, 2016 detail assignment letter, Ms. Coleman's detail assignment needed to be authorized every 120 days and was only valid for up to one (1) year. *See Dkt. 66, Ex. 12.*
[2] According to the deposition testimony of M. Arzate, he assigned Ms. Coleman work in 2018 that she likely completely in a few days. *See Dkt. 66, Ex. 14.*
[3] Until very recently, Ms. Coleman continued to be an employee of the CEX, as an Emergency Flight Management Specialist. However, since June 2020, pursuant to Defendant's authority, Ms. Coleman was permanently assigned as an Engineering Technician, which means that Ms. Coleman must proficiently perform the duties of an Engineering Technician or face potential discipline, including up to termination.

682 F.3d 1299 (11th Cir. 2012), the Eleventh Circuit of Appeals held that the hospital administration created a retaliatory hostile work environment for employees by spreading rumors about them, damaging their reputations, disciplining them, maligning them in front of co-workers, instructing other employee to encourage them to resign, limiting their privileges, giving them low proficiency ratings, and removing them from committees and projects.). *See Muniz v El Paso Marriott*, 773 F.Supp.2d 674 (W.D. Texas 2011) "Central to the court's inquiry into a hostile environment claim is whether the alleged harasser's actions have undermined the victim's workplace competence, discouraged h[er] from remaining on the job, or kept h[er] from advancing in h[er] career." *Muniz* at 679, citing *City of Houston v. Fletcher,* 166 S.W.3d 479, 490 (Tex.App.2005); *See Walsh v. Scarsdale Union Free Sch. Dist.*, 375 F. Supp. 3d 467, 491 (S.D.N.Y. 2019)(Even frequent petty occurrences and social isolation can constitute a hostile work environment.). *See Dkt, 66, Ex. 15, Declaration of J. Dotter. Mr. Dotter details management's retaliation for protected activity, the isolation, disparate treatment, and hostility faced by Ms. Coleman.*

    Since courts have found hostile work environments in cases where employers have merely interfered with an individual's work performance and career, a finding of hostile work environment in Ms. Coleman's case is also warranted because the uncontroverted evidence confirms that Ms. Coleman was sexually assaulted and harassed beginning in 2010. *See Dkt 66, Ex. 3, CDI, corroboration of the allegations against Mr. Monroe, beginning in 2010 and through (at least) July 2015.* Since 2010, Defendant has blatantly flouted the law, regulations, and policies, and has completely sabotaged Ms. Coleman's life and career. The severity of the harassment should be judged from "the perspective of a reasonable person in plaintiff's position, considering **'all the**

4

**circumstances'**. *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 81 (1998) (quoting *Harris,* 510 U.S. at 23)(emphasis mine). Defendant's hostility against Ms. Coleman has been cruel, humiliating, physically threatening, abusive, continual. The evidence shows Defendant's intentional sabotage and interference with Ms. Coleman's attempts to succeed as an Engineering Technician and with her opportunities of future employment. See *West v. City of Houston,* 960 F.3d. 736 (5th Cir. 2020); *Weller v. Citation Oil & Gas Corp*, 84 F. 3d. 191 (5th Cir. 1996 )(Title VII protects against acts so severe and pervasive that it destroys [plaintiff's] opportunity to succeed.).

Moreover, hostile actions that have contributed to an employee suffering adverse medical conditions have also been found to constitute a hostile work environment. In our facts, Defendant's hostility, abuse, isolation, and acts of sabotage against Ms. Coleman have resulted in her being diagnosed with a serious medical condition, for which Plaintiff is seeking medical treatment. *See Dkt 66, Ex. 1. See also Noviello v. City of Boston*, 398 F.3d 76 (1st Cir. 2005)(Plaintiff offered evidence that incidents contributed to physical and psychological problems that required treatment, thus underscoring the negative effect on her work performance.); *Chavez v. Thomas & Betts Corp.*, 396 F.3d 1088, 1097 (10th Cir. 2005)(Plaintiff testified that supervisor's conduct toward her was humiliating, embarrassing, and caused her to become depressed and sick. A reasonable jury could conclude the same.).[4]

---

[4] Courts have also considered how defendant's actions may impact other employees when determining severity. The Court in Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, (1998) reviewed a claim of retaliation with a concern on how defendant's acts "might have dissuade[d] a reasonable worker from making or supporting a charge of discrimination." *Id* at 57. See also *Baird v. Gotbaum*, 662 F.3d 1246 (D.C. Cir. 2011). (An employer's deliberate attempts to affect an employee's finances and access to healthcare strike us as

5

2.     Causation

Because it is often difficult for plaintiffs to cite direct evidence of retaliation, causation between protected activity and adverse employment action may be "inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision. In our facts, the record is replete with evidence of Defendant's knowledge of Ms. Coleman's protected acts. Defendant, from the highest levels of the service to the first line supervisors had knowledge of Ms. Coleman's protected acts.

For example, on July 21, 2015, after Ms. Coleman complained to Lieutenant Colonel Alexander Smith, Commander, 502 Installation Support Group, he ordered Brenda Roesch, Civil Engineer of the 502 Civil Engineering Squadron (hereinafter "Ms. Roesch"), to conduct a Commander Directed Investigation (CDI). Ms. Roesch, along with Lieutenant Colonel Tammy McElhaney, 502 Installation Support Group Deputy, (hereinafter "Lt. Col. McElhaney") assigned Grace Cormier Johnson as the CDI Investigating Officer (hereinafter "Ms. Cormier-Johnson"). Ms. Cormier-Johnson interviewed at least 17 employees of the Civil Engineering Squadron ("CES"), including Willie Monroe, (GS-14), Richard Trevino (GS-15), Air Force Civil Engineer Center Operations Division

---

precisely the type of conduct that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id. at 12*49).

6

Chief (presently the Civilian Leader of the 502 Civil Engineering Squadron and James Graham (SG-14), 502 Civil Engineering Squadron.[5]

During every interview, Ms. Cormier-Johnson provided each witness with a written copy of the specific allegations she was investigating. The CDI questionnaire given to each witness specifically identified Ms. Coleman as the complainant and contained the three (3) allegations Ms. Cormier-Johnson was investigating. Each witness provided a handwritten and/or type written statement specifically addressing written questions and the allegations made by Ms. Coleman. *Exhibit A, attached. CDI statements from witnesses identifying Ms. Coleman as the complainant and detailing her allegations against Mr. Monroe, the CEX Flight Chief)*. In 2016, shortly after Ms. Coleman was returned to work in the CEX, Mr. Monroe, through his accomplices, solicited statements from employees directing them to attack Ms. Coleman's character.

Furthermore, with regard to the February 2016 threat and assault, Ms. Coleman, reported the assault to the Base Police and subsequently, along with Eloise Stripling, (President, AFGE Local 1367), spoke with Felipe Jiménez, Technical Director to Brigadier General LaBrutta, Commander of the 502 Air Wing, *See Dkt 66, Declaration of Eloise Stripling, Ex. 7*. The base police investigated the assault by questioning at least six (6) witnesses including the assailant. *See Dkt 66, Exhibit 8*. Mr. Jiménez informed Ms.

---

[5] The employees interviewed for the CDI included: Willie Monroe (CEX Fight Chief, GS-12, perpetrator); Steven Clark (GS-11); Gregorio Andrades (GS-11); Wendell Ramclam (GS-9); Frank Gautier (GS-12); Vaughn Cropper (GS-9); William Volpenheim (GS-9); Robert Trout (GS-9); Tasha Escarmant (GS-9); Ruth Solis Larrea (GS-7). Ms. Larrea Solis was an employee of the CES; Donnell Brown (GS-9); Vicky Burton (GS-6). Ms. Burton was the Administrative Assistant for the Civil Engineer Fire Department (CEF); Richard Trevino (GS-15); Sasha Wilson (Not employed); Nigel Wallace (GS-9); Carmen Rubio (Contractor); Gregory Wilson (GS-11); James Graham (GS-14). Some witnesses hand-wrote their responses, others typed them. Neither the interviews nor statement contained a confidentiality requirement.

7

Roesch and Lt. Col. McElhaney of Ms. Coleman's complaint and they, among many others, including employees of Civilian Personnel formulated a plan to detail Ms. Coleman into a position to set her up for failure because she complained about sexual abuse, harassment, and assault since Ms. Coleman's disapproval interfered with the aberrant and depraved behavior they accepted as normal.[6]

3.   <u>Continuing Hostility</u>

Defendant has retaliated against Ms. Coleman since she first complained to the EEO Office in 2011 about Mr. Monroe's sexual assault. *Dkt 66, Ex. 1; Ex. 2, deposition testimony of C. Babb, confirming Ms. Coleman's 2010 sexual assault complaint.* The retaliation intensified again in 2013 (testimony to EEO) and 2015 (complaint to Lt. Col. Smith), both instances were in direct response to Ms. Coleman's protected activity. Defendant's retaliation and hostility continued unabated through 2016 and is still occurring. Since the nature of a hostile work environment involves repeated conduct and patterns, courts have regarded said environments as <u>pure continuing violations</u>. As such, Ms. Coleman's evidence should include the relevant pattern and behavior for the entire duration of hostility. *See National Railroad v. Morgan*, 536 U.S. 101 (2002).

In *Morgan,* the majority observed that the "entire hostile work environment encompasses a single unlawful employment practice" because the "very nature" of a hostile

---

[6] Subsequently, many individuals including, Corrie Colabianchi (Mayer), Employment Management Specialist, Lakreisha Johnson Lackland EEO Office Director and the Office of Special Investigation Special Agent Stephen Ardary, Special Agent Jason Hutchings and Special Agent Hight obtained knowledge of Ms. Coleman's protected acts and failed to adhere to military and civilian instruction to protect victims. *See Dkt 66, pg. 12, and Ex. 14*. M. Arzate's deposition testimony, stating that no one in management or civilian personnel responded to his numerous appeals for relief concerning Ms. Coleman's detail status. *See Dkt 66*, *Ex 7*.

work environment "involves repeated conduct.'" *Id*. *at 115, 117*.  In so holding, the court recognized that a charge attacking the environment and any of its components, such as Ms. Coleman's Amended Complaint here, is timely so long as it is filed within the limitations period following a manifestation of the pervasively hostile atmosphere. *Id*. *at 122*. Given this construction of a hostile work environment claim, the court in *Morgan* concluded that when a single hostile work environment "practice" persists into the limitations period prior to suit, the plaintiff can recover damages resulting from any and all of the hostile acts comprising that environment regardless of when the acts took place. *Id*. *at 117, 121-122*.

4.  <u>Commander Directed Investigation (CDI)</u>

Defendant's contention that the CDI was not the proper method for investigating an allegation of harassment or sexual assault is also strong evidence of Defendant's hostility and proof of its concerted effort to retaliate and silence Ms. Coleman.  This intentional obstruction and subversion of the truth originated from the highest levels of management and passed through every level of supervision. Nonetheless, any investigation that substantiated abuse, harassment, and unwelcome sexual contact by a supervisor over a subordinate should result in some action to protect the victim(s) and punish the perpetrator.[7]  However, in our facts, the opposite is true. After the findings of the CDI were released to management, Defendant further victimized Ms. Coleman by refusing to inform her of the findings of the CDI, prosecuted baseless disciplinary actions against her, and returned her to work for the perpetrator, who promptly assaulted and threatened her life.

---

[7] In accordance with the AIR FORCE INSTRUCTION 90-6001, 21 MAY 2015, Special Management SEXUAL ASSAULT PREVENTION AND RESPONSE (SAPR) PROGRAM 1.4.16. Air Force personnel who file an unrestricted or restricted report of sexual assault will be protected from reprisal, coercion, ostracism, maltreatment or retaliation, or threat of reprisal, coercion, ostracism, maltreatment or retaliation, for filing a report.

After filing a police report and meeting with Felipe Jiménez, Defendant decided instead to promote and reward the perpetrator and willfully ruin the life and career of the victim with shameful and obvious tactics.

Respectfully Submitted,
By: _____
Ricardo A. García-Tagle
Bar Number 24025375
315 S. St. Mary's Street
San Antonio, TX 78205
210.444.1599
210.855.6098 (fax)
Ricardo@ragarcialaw.com

ATTORNEY FOR PLAINTIFF

CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2020, I electronically filed the foregoing document with the Clerk of the United States District Court, Western District of Texas, San Antonio Division, using the electronic case filing system of the Court that sent a "Notice of Electronic Filing" to all attorneys of record below:

**Attorney for Defendant, James Dingivan:**
Assistant United States Attorney
601 NW Loop 410, Suite 600
San Antonio, Texas 78216
Tel: (210) 384-7300
Fax: (210) 384-7322

_____
Ricardo A. García-Tagle

10