UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| VALENTIA COLEMAN, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION NO. SA-17-CV-00819-FB-RBF |
| BARBARA BARRETT, Secretary of the Department of the Air Force, | § § § § § | |
| *Defendant*. | § § | |

**DEFENDANT'S SUPPLEMENTARY BRIEFING**

Pursuant to the Court's authorization on December 9, 2020, permitting limited supplementary briefing on the issues involved with Ms. Coleman's allegations, Defendant submits the following:

**Relevant Facts Relating to Claims of Retaliatory Hostile Work Environment[1]**

1. The parties agree that the relevant protected EEO activity in this case was a private phone call between an EEO investigator and Ms. Coleman in March 2015.

2. On June 9, 2015, Ms. Coleman wrote two e-mails to her section leader in which (a) she alleged that she was being harassed and discriminated against and (b) she requested a transfer to another work unit. Dkt 60-1 at 13. The letters were forwarded up the chain of command to Mr. Monroe, who denied the request. *Id*. at 14.

---

[1] Defendant continues to note that there is no is no cognizable cause of action for retaliatory hostile work environment under Fifth Circuit law and preserves all appellate rights with respect to the issue. *See* Dkt. 6 at 7. Moreover, in cases where Courts within the Fifth Circuit have recognized a claim, it has not been against the government. There is no clear ruling in which Title VII waives sovereign immunity for retaliatory hostile work environment.

3.  Later in June 2015, Ms. Coleman, along with twenty-five other members of the emergency management staff, attended a four-day incident management course. *Id*. at 13. The course instructor removed Ms. Coleman from the course for non-participation. *Id.* Ms. Coleman was subsequently accused of "conduct unbecoming a federal employee" for her misconduct and received a formal notice of reprimand as a disciplinary sanction. *Id*. at pp. 13, 20.

4.  On July 20, Ms. Coleman went to the Inspector General's office and asked about filing a complaint for reprisal. *Id*. She alleged "Monroe started giving her mean looks and he stopped talking to her; that she was assigned extra training duties; and she was called names by co-workers and she began to hear comments she had made in her testimony repeated by people in the office." *Id*.

5.  Two days later, Ms. Coleman approached Colonel Alexander Smith, 502 ISG/CC, and told him she was "upset and afraid; that she has no family to protect her; that she has to watch everything she does and that he [apparently Monroe] has been writing her up since June; that it was because she testified for [Ms. Wilson] and everyone at work knows what she said." *Id*. at 16. The same day, Col Smith called Ms. Brenda Roesch, Director of the Civil Engineering Squadron and directed Ms. Roesch to meet with Ms. Coleman immediately. *Id*. Ms. Roesch met with Ms. Coleman, who expressed concerns about her treatment and requested a transfer to a different work unit. *Id*. Ms. Roesch granted the request and had Ms. Coleman transferred into the Real Property section effective July 27, 2015. *Id*. at 16-17.

6.  In November 2015, Ms. Coleman learned that management was conducting a review of the positions in the Emergency Management section and was considering upgrading certain positions from GS-9 to GS-11, which would result in a pay increase of

approximately $10,000 per year. *See* Pl. Amended Compl. ECF No. 7 at ¶35 and Exhibit 5, EEO Complaint File, at p. 50.

7. On January 29, 2016, Ms. Coleman filed a step-one grievance to challenge the notice of reprimand that arose from her misconduct at the incident management course. Dkt 60-6. In her grievance, Ms. Coleman alleged that the members of the Emergency Management section were engaged in a "conspiratorial plan to frame me" and "further harm me via lateral transfer out of my position in CEX, at a time when those positions are being reviewed for upgrade to GS-11." *Id*. "I am grieving the attempt to frame me . . . I will not be further harmed by the corrupt actions of the CEX chain of command . . . I expect to work in a non-hostile environment and to be evaluated fairly on my work." *Id*.

8. Ms. Coleman then asked Ms. Roesch to return her to the Emergency Management section; the request was granted and effective February 2, 2016. Dkt 1 at 17.

**Preclusion By 5 U.S.C. § 7121(d) and 29 C.F.R. § 1614.301(a).**

9. Ms. Coleman's grievance, dated January 29, 2016, under "Description of Management Action Being Grieved" wrote, in part:

> In addition to appealing the reprimand, for which just cause does not exist, I am grieving the attempt to frame me and then to further harm me via a lateral transfer out of my position in CEX, at a time when those positions are being reviewed for upgrade to GS-11. I will not be further harmed by the corrupt actions of the CEX chain of command. I have requested to be returned to my official position and I expect to work in a non-hostile environment and to be evaluated fairly on my work. I will tolerate no reprisal, discrimination, or harassment.

Dkt 60-6.

10. This grievance specifically identifies the "hostile" work environment she alleges existed in 2015. She cannot now credibly argue that these were not "matters" as that term is defined in various federal courts. See, e.g., *Guerra v. Cuomo*, 176 F.3d 547, 550 (D.C. Cir.

1999) (citing *Bonner v. Merit Sys. Prot. Bd.*, 781 F.2d 202, 204–05 (Fed. Cir. 1986) and *Facha v. Cisneros*, 914 F. Supp. 1142, 1148 (E.D. Pa. 1996)).

## Plaintiffs Has Not Produced Evidence of Causation

11. Title VII retaliation claims must be proved according to traditional principles of "but for" causation. *University of Texas Southwestern Medical Center v. Nassar*, - U.S. - , 133 S.Ct. 2517, 2533-34 (2013). This means that Plaintiff must ultimately show that "but for" her protected EEO activity in March 2015, the Air Force would not have taken materially adverse employment action against her. There is no such proof in this case.

12. Absent an inference of causation due to temporal proximity, the Fifth Circuit has held that in order to establish the causation prong of a retaliation claim, an employee should demonstrate that the employer knew about the employee's protected activity. *Manning v. Chevron Chem. Co., LLC,* 332 F.3d 874, 883 (5th Cir. 2003) (citing *Medina v. Ramsey Steel Co., Inc.* 238 F.3d 674,684 (5th Cir. 2001)). It is well established that in determining whether an adverse employment action was taken as a result of retaliation, our focus is on the final decisionmaker." *Ackel v. Nat'l Commc'n, Inc.,* 339 F.3d 376, 385 (5th Cir. 2003) (quoting *Gee v. Principi,* 289 F.3d 342, 346 (5th Cir. 2002)). Here, there is no evidence that Mr. Monroe, Ms. Roesch, Col Smith, Mr. Arzate, or any decisionmaker knew about her private phone call in March 2015.

13. So instead, Plaintiff must rely on mere temporal proximity. But the cases which rely solely on temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prime facie* case uniformly hold that the temporal proximity must be "very close," *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001). *See, e.g., Richmond v. ONEOK, Inc.*, 120

F.3d 205, 209 (10th Cir. 1997)(3 month period insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-1175 (7th Cir. 1992)(4 month period insufficient). Here, any hostile work environment claims which are sufficiently temporarily proximate are (1) unquestionably part of the grievance described above, and (2) not sufficiently severe or pervasive to be considered a hostile work environment. Again, it was Ms. Coleman who requested a transfer to a different work unit in July 2015. Dkt 60-6. Ms. Roesch merely granted the request. *Id*. at 16-17.

### Continuing Violation Theory Does Not Apply to Retaliation Claims

14. In *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the Supreme Court actually rejected the application of the continuing violation theory to discrimination and retaliation claims. *Rogers v. Shinseki*, No. CV SA-12-CA-101-OG, 2013 WL 12315104, at *1 (W.D. Tex. Nov. 29, 2013). *Morgan* emphasized that "[a] discrete retaliatory or discriminatory act occurred on the day that it happened." *Id.*[2]

### CONCLUSION

For these reasons, the government respectfully requests that the Court enter summary judgment in its favor on all claims and grant any further relief to which the government may be entitled.

[*Signature Page Follows*]

---

[2] This ruling further underscores why there can be no claim for retaliatory hostile work environment.

Dated: December 16, 2020

                                      Respectfully submitted,
                                      **GREGG N. SOFER**
                                      UNITED STATES ATTORNEY

By:     <u>/s/*James Dingivan*</u>
          **JAMES E. DINGIVAN**
          Assistant United States Attorney
          Texas Bar No. 24094139
          601 N.W. Loop 410, Ste. 600
          San Antonio, Texas 78216
          James.dingivan@usdoj.gov
          Tel. (210) 384-7372
          Fax. (210) 384-7312

          ATTORNEYS FOR DEFENDANT

## **CERTIFICATE OF SERVICE**

       I hereby certify that on December 16, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Ricardo A. Garcia-Tagle
Law Office of Ricardo A. Garcia-Tagle
315 S. St. Mary's Street
San Antonio, Texas 78205
ricardo@ragarcialaw.com

          <u>/s/ James E. Dingivan</u>
          **JAMES DINGIVAN**
          Assistant United States Attorney